# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JOHN CALON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 14-00913-CV-W-FJG |
| | ) |
| BANK OF AMERICA CORPORATION, | ) |
| ET AL., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is defendant's Motion to Dismiss (Doc. # 16).

### I. BACKGROUND

On December 9, 2014, plaintiff filed his Complaint asserting five causes of action against defendants Bank of America Corporation ("BAC"), Bank of America Corporation, N.A. ("BANA") and Brian Moynihan (Bank of America's CEO)[1]. The claims asserted against the defendants include: Theft, Fraud, Extortion, Discrimination and Breach of Contract.

Plaintiff states in his Complaint that in October 2001, he obtained a loan through Countrywide Home Loans. As part of the loan package, plaintiff states he purchased a product called the "Easy Rate Interest Rate Reduction Plan." Plaintiff alleges that in mid-December 2007, he notified Countrywide that he was going to exercise his rights under the program. Plaintiff states that Countrywide started the process to lower the

---

[1] Plaintiff also initially named "Mr. BAC" as a defendant. However, in the Order granting plaintiff's motion for leave to proceed in forma pauperis, the Court dismissed this defendant, as plaintiff had failed to specify whether Mr. BAC was a corporation or an actual person and because plaintiff had failed to specify whether he was asserting claims against or on behalf of Mr. BAC.

1

interest rate, when in January 2008, Bank of America took over Countrywide. In August 2008, Bank of America notified plaintiff that they did not have to honor this program and have since that time continued to refuse to honor the program.

Plaintiff also alleges that he set up an escrow account to pay the taxes and insurance for his mortgage. In October 2008, plaintiff alleges that BAC began automatically making payouts from the escrow account without plaintiff's authorization. Plaintiff alleges that "in repeated communications with defendants, when Plaintiff spoke of legal action over BAC's unauthorized withdrawals, Plaintiff was threatened/extorted by defendants . . .that the loan would be accelerated and put into foreclosure, and would ruin plaintiff's credit, should Plaintiff quit making payments to escrow account or take the issue to court, to extort Plaintiff's silence in the matter." (Plaintiff's Complaint, ¶ 12).

Plaintiff also alleges that BAC repeatedly failed to pay the insurance on time. In 2012, plaintiff's insurance company canceled his policy and BAC withheld this information from plaintiff until March 2013. Plaintiff alleges that defendants then replaced his insurance with a lender provided insurance. Plaintiff alleges that defendants over insured the house and as a result have stolen/extorted or otherwise fraudulently acquired thousands of dollars from plaintiff's escrow account. (Plaintiff's Complaint, ¶ 13). Also with regard to insurance, plaintiff states that he discovered in June 2014, that BAC had purchased no insurance for his home and it had been uninsured for the past two years. Plaintiff alleges that BAC through deception has stolen thousands of dollars from plaintiff's escrow account for phony insurance policies which do not exist. Plaintiff alleges that BAC has failed to provide an accounting for

plaintiff's missing escrow money. (Plaintiff's Complaint, ¶ 14).

Plaintiff also alleges that the defendants have discriminated against him because of his racial, religious, origin, and disabled status. Plaintiff alleges that the defendants have continually refused to provide plaintiff a copy of the alleged insurance policy or to provide him with information about his loan. Plaintiff also claims that since September 2014, he has been trying to payoff his loan early, using the money left in the escrow account. However, plaintiff asserts that the defendants have refused to release the leftover escrow funds. Additionally he asserts that BAC now claims that he must pay an "early payoff fee" of $5,000, even though his loan agreement with Countrywide contained no such fee.

## II. STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

In <u>Allen v. Bank of America Corp.</u>, No. 10-4205 (MJD/JSM), 2011 WL 3837150, (D.Minn. July 22, 2011), the Court stated:

> The Court will liberally construe the pleadings of an unrepresented party. . . . Pro se complaints, however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. . . . [I]f the court can reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so despite the [plaintiff's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .The court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed. . . .Neither may the courts, in granting the deference owed to pro se parties, assume the role of advocate for the pro se litigant.

<u>Id</u>. at *5 (internal citations and quotations omitted).

## III. DISCUSSION

**A. Defendants Moynihan**

Defendants argue that it is improper under Missouri law to sue a corporate officer or a director simply because of their position in an organization. Defendants argue that while Brian Moynihan is listed as a defendant and grouped with the other defendants throughout the Complaint, there are no allegations which are specific to Moynihan himself. In response, plaintiff argues that Moynihan is "claiming, because he is some kind of corporate ultra citizen, that he is responsible to no one but himself, and that someone like the Plaintiff, a pauper, has no right, to dare attempt, to hold him accountable for his actions. Defendant Moynihan as an employee and now CEO and Chairman of the Board of Bank of America, has during his tenure, to varying degrees, overseen, directed, collaborated and worked to cover up the greatest criminal financial disaster in human history . . .." (Suggestions in Opposition, p. 2). Plaintiff then goes into great detail to list various cases that Countrywide and Bank of America have settled

over the past six years. Plaintiff adds that "[a]s a result of Defendant Moynihan's leadership, oversight, direction and other criminal activities of the Bank of America Corporation and its various subsidiaries, he is the person that is ultimately responsible for the crimes committed against Plaintiff." (Suggestions in Opposition, p. 7).

However, despite making broad sweeping generalizations about Moynihan, plaintiff never alleges in his Complaint or in his suggestions in opposition that Moynihan took any specific action against him or that he was personally involved in handling plaintiff's loan. As the Court stated in DeJana v. Marine Technology, Inc., No. 4:11-CV-1690-JAR, 2013 WL 6768407 (E.D.Mo. Dec. 20, 2013),

> [i]t is well established that a corporate officer or director does not incur personal liability for the corporation's torts merely by reason of his official status. His liability, if any, stems from his own tortious conduct. "A corporate officer is individually liable for the torts he [or she] personally commits [on behalf of the corporation] and cannot shield himself [or herself] behind a corporation when he [or she] is an actual participant in the tort."

Id. at *2 (quoting U.S. v. Northeastern Pharmaceutical & Chemical Co., Inc., 810 F.2d 726, 744-45 (8th Cir.1986)). In the instant case, because plaintiff has not alleged in either his Complaint or in his response any specific allegations against defendant Brian Moynihan, the Court hereby **GRANTS** the Motion to Dismiss the Complaint as to this defendant.

### B. Defendant BAC

With regard to defendant BAC, defendants argue that the parent corporation has been improperly named as a defendant. Defendants argue that BAC as BANA's parent corporation has had no involvement with this matter and cannot be held liable for any actions of BANA. In opposition, plaintiff states only that BAC is the successor in interest

to Countrywide and has assumed liability for the conduct of its subsidiary, BANA. Defendants are correct that "a parent corporation is normally not liable for the acts of its subsidiary corporations . . .The mere existence of a parent-subsidiary relationship, without more, does not subject a parent corporation to liability for acts of the subsidiary." Blanks v. Fluor Corp., 450 S.W.3d 308 (Mo.App.2014). However, in Blanks, the Court noted two exceptions to the rule that parent corporations are not generally liable for the acts of their subsidiaries: 1) piercing the corporate veil and 2) liability under an agency theory. "Piercing the corporate veil is an equitable doctrine used by the courts to look past the corporate form and impose liability upon owners of the corporation – be they individuals or other corporations – when the owners create or use the corporate form to accomplish a fraud, injustice, or some unlawful purpose." Id. at 375. The Court in Blanks also noted:

> Missouri law is in accord with that of a number of other states that recognize that a traditional principal-agent relationship may be created between two corporations, whereby one corporation may be held liable for the activities of another corporation, such as its subsidiary. Weitz Co. v. MH Washington, 631 F.3d 510, 522 (8th Cir. 2011)(noting that Missouri law recognizes piercing the corporate veil, referred to there as "alter-ego" liability, and agency liability as separate, distinct causes of action).

Id. at 379. In Fournier v. Bank of America Corporation, No. 5:13-CV-00702, 2014 WL 421295 (N.D.N.Y. Feb. 4, 2014), the defendant moved to dismiss BAC arguing that the plaintiff had not alleged any facts regarding a relationship between BAC and herself or any other wrongdoing on BAC's part. The Court agreed and dismissed plaintiff's claims, but because plaintiff was proceeding pro se, the Court granted her leave to replead her claims. The court noted,

> In an amended complaint, Plaintiff could plausibly allege facts supporting a valid claim or claims against BAC. Consequently, the Court will permit

> Plaintiff leave to replead specific allegations against BAC as they relate to the claims not dismissed with prejudice in this Decision and Order. To bring a valid claim against BAC that will survive a motion to dismiss, the Plaintiff must allege additional facts that implicate BAC directly. Thus, a proper amended complaint that includes BAC as a Defendant must allege facts identifying actions taken directly by BAC, if such facts exist, and not merely actions taken by the Defendants collectively.

Id. at *3.

Similarly, in the instant case, the Court finds that plaintiff has failed to state a claim against defendant BAC. However, because it is possible for a parent corporation to be liable for the acts of its subsidiary under certain circumstances enumerated above, the Court hereby **GRANTS** the motion to dismiss, but will give plaintiff an opportunity to replead allegations against defendant BAC if he has allegations which relate to BAC directly.

### C. Fraud

Defendants state that plaintiff has failed to set forth the time, place and contents of the specific representations allegedly made to him by the defendants. In Tension Envelope Corp. v. JBM Envelope Co., No. 14-567-CV-W-FJG, 2015 WL 893242 (W.D.Mo. Mar. 3, 2015), the Court noted that: the elements of a fraudulent misrepresentation claim under Missouri law are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

Id. at *10 (quoting Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 438–39 (8th Cir.2013).

The Court also noted that in pleading a claim of fraudulent misrepresentation, the complaint must meet the heightened pleading standards of F.R.Civ.P. 9(b) for claims alleging fraud. "The plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" Id. at *10, (quoting Freitas, 703 F.3d at 439)).

Plaintiff in response states that "[d]efendants' employees since 2008, repeatedly and fraudulently claimed to Plaintiff that they did not have to honor the convertible option because of some alleged secret government agreement among other excuses and other phony statements made to Plaintiff, from January 2008 through the present day, as part of a scheme to steal interest money from Plaintiff." (Plaintiff's Suggestions in Opposition, p. 9). However, plaintiff provides no additional details such as who made the statements, when these statements were made and what specifically was said. Because the Court finds that plaintiff's fraud claim lacks the requisite specificity required under Fed.R.Civ.P. 9, the Court will **GRANT** the Motion to Dismiss, but will give plaintiff an opportunity to amend his Complaint to replead his fraud allegations with the level of specificity required under Fed.R.Civ.P. 9(b).

### D. Theft

Defendants state that they are assuming that plaintiff is asserting a cause of action for conversion. However, defendants argue that although plaintiff alleges that the defendants were making unauthorized payouts from plaintiff's escrow account, plaintiff never identifies the account, and does he explain how the defendants allegedly took the money from his account.

"Under Missouri law, 'conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand.'" Boswell v. Panera Bread Co., No. 4:14-CV-1833-AGF, 2015 WL 631259, *3 (E.D.Mo. Feb. 12, 2015), (quoting Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 592 (Mo.App.2008)). The Court in Boswell stated that "[c]onversion is not the appropriate action when the claim is solely for the recovery of money." Id. However, the Court noted that "[s]pecific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel." Id. (quoting Dayton Constr., Inc. v. Meinhardt, 882 S.W.2d 206, 208-09 (Mo.App.1994)). The Court also noted that the Missouri Supreme Court identified an exception "in cases where a plaintiff placed funds 'in the custody of another for a specific purpose,' and the defendant diverts those funds 'for other than such specified purpose[.]'" Id. (quoting Dillard v. Payne, 615 S.W.2d 53,55 (Mo. banc 1981)). In his sur-reply, plaintiff states that "[n]or is there a clause in the 'Note' giving the Lender a right to access Plaintiff's escrow account .. . .Defendants since 2008 have repeatedly taken money out of Plaintiff's escrow account without his permission and refused to return it. When you take a person's money, when you have no right to, without their permission, to buy nonexistent insurance policies, that the person was under no obligation to buy in the first place, its called theft." (Plaintiff's Sur-Reply, p. 4). The Court finds that plaintiff has failed to state a cause of action for theft and so therefore **GRANTS** the Motion to Dismiss as to this claim. However, the Court finds that plaintiff may be able to state a claim for conversion of his escrow funds, but finds that additional information is necessary. Accordingly, plaintiff is hereby

9

directed to file an Amended Complaint which more clearly details the facts relating to this claim.

### E. Extortion

Defendants state that under Missouri law, extortion is a crime and not a civil cause of action. Thus, defendants argue, plaintiff does not have standing to bring a criminal charge of extortion. In his suggestions in opposition to the Motion to Dismiss, plaintiff does not respond directly to the argument regarding whether he has standing to bring a claim for extortion, but instead he describes how in September 2010, during a phone call to defendants concerning the Easy Rate Reduction program and the closing of his escrow account, plaintiff was threatened that his payments would disappear, defendants would foreclose on his house and ruin his credit. Plaintiff alleges that his mortgage payments were only restored when he agreed to drop the issue of the Easy Rate Reduction.

The Missouri criminal code, Mo.Rev.Stat. § 570.010 defines "coercion" as: "a threat, however communicated:

> (e) [t]o harm the credit or business repute of any person; or
> . . .
> (g) [t]o inflict any other harm which would not benefit the actor."

The editor's notes to the statute state that the definition of "coercion" is new and is "meant to codify and clarify related concepts used in defining blackmail-extortion type offenses. The gravamen of the concept is a communicated threat of harm." In <u>Lafferty v. Rhudy</u>, 878 S.W.2d 833 (Mo.App.1994), the Court stated:

> [c]riminal sanctions against doing or not doing some act do not automatically include authority for civil actions . . .In fact, as the Missouri Supreme Court stated in <u>Christy v. Petrus</u>, 365 Mo. 1187, 1192, 295 S.W.2d 122,126 (Mo. banc 1956):

> [A] statute which creates a criminal offense and provides a
> penalty for its violation will not be construed as creating a
> new civil cause of action independently of the common law,
> unless such appears by express terms or by clear
> implication to have been the legislative intent.

Id. at 835 (internal citations and quotations omitted).

In the instant case, the Court can find no authority either express or implied which indicates that a private right of action is available for extortion. Accordingly, the Court hereby **GRANTS** defendants' Motion to Dismiss this claim.

### F. Discrimination

With regard to his discrimination claims, plaintiff states that "[s]ince March 2013, BAC, Mr. BAC and Moynihan did discriminate against Plaintiff because of his racial, religious, origin and disabled status and refused service to Plaintiff, in his attempts to get a copy of this alleged insurance policy." (Complaint, ¶¶ 15, 21,22, 24). Plaintiff also alleges that the defendants subjected him to racial epithets such as calling him "chief." (Complaint ¶ 25). Defendants argue that plaintiff has failed to specify the statutes which he is alleging the defendants have violated, forcing them to guess as to which rights the plaintiff believes they have violated.

In his sur-reply, plaintiff states that he did not get into the specifics in his complaint regarding various racial indignities as he assumed these would be fleshed out during discovery. With regard to his claims for religious and disability discrimination, plaintiff states that because the defendants are refusing to allow him to pay off his loan early, he is being forced to financially support defendants newly given political and religious rights under two recent Supreme Court opinions. With regard to the disability discrimination, plaintiff states that because the defendants knew he was disabled, they

11

"pushed a policy that disabled people are stupid and poor (can't hire lawyers) and should be easy to take advantage of."  (Plaintiff Sur-Reply, p. 5).

As the Court has previously noted, these claims lack any specificity or detail regarding exactly what actions plaintiff is complaining of.  In <u>Combs v. Cordish Companies, Inc.</u>, No. 14-227-CV-W-ODS, 2015 WL 3716190, (W.D.Mo. June 15, 2015), the Court stated:

> Section 1981 declares that all persons in the United States "shall have the same right. . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C.§1981(a).  Congress defined the phrase "make and enforce contracts" to "include[ ] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." <u>Id</u>. §1981(b). A claim under this statute has four elements: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." <u>Gregory v. Dillards, Inc.</u>, 565 F.3d 464, 469 (8th Cir.)(en banc), <u>cert</u>. <u>denied</u>, 558 U.S. 1025 (2009).

<u>Id</u>. at *12.  In the instant case, the Court does not find that plaintiff has sufficiently alleged the elements of any type of racial, religious or disability discrimination claim.  Rather, plaintiff has offered only vague, conclusory statements regarding how he believes he was discriminated against.  The Court will **GRANT** the Motion to Dismiss plaintiff's discrimination claims, but will give plaintiff an opportunity to amend his Complaint to replead these claims with a greater level of specificity as is required under the Rules.

### G.  Breach of Contract Claim

With regard to plaintiff's breach of contract claim, defendants state that plaintiff appears to allege that BANA breached a contract with him by failing to honor an agreement he had with his previous lender.  Defendants argue that plaintiff has failed to

allege that he had a contract with them. In opposition, plaintiff states that he has properly plead the elements of a breach of contract claim, but he does not describe how the conduct he complains of fits within that criteria. "In Missouri, to state a cause of action for breach of contract, a plaintiff must plead: '(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Doug Volz v. Provider Plus, Inc., No. 4:15CV0256TCM, 2015 WL 3621113, *2 (E.D.Mo. June 9, 2015)(quoting Rental Co., LLC v. Carter Group, Inc., 399 S.W.3d 63, 67 (Mo.App.2013)). Plaintiff argues in his sur-reply that:

> [d]efendants have presented themselves to this court as ignorant of the contract, they have the same "Note" as Plaintiff. Defendants claim they do not know the Plaintiff's escrow account number, yet they seemed to know it, just fine, when they were stealing money out [of] it. Defendants claim they do not know the dates when they stole money out [of] Plaintiff's escrow account, they have the same financial records as Plaintiff. . . . Plaintiff has been, and continues to be held in financial servitude by Defendants, for no other reason, than the continued mishandling of plaintiff's mortgage by Defendants, as a result of their ongoing criminal and racist activities.

(Plaintiff's Sur-Reply, p. 6). Rather than describing how he believes the defendants have breached a contract, plaintiff in his response seems to simply reiterate his previous claims against the defendants. Based on the allegations in his current Complaint, the Court finds that plaintiff has failed to state a claim for breach of contract. Therefore, the Court will **GRANT** the Motion to Dismiss plaintiff's breach of contract claim, but will give plaintiff an opportunity to amend his Complaint to replead these claims with a greater level of specificity as required under the Rules.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, defendant's Motion to Dismiss is

hereby **GRANTED IN PART** and **DENIED IN PART** (Doc. # 16).  Plaintiff shall file his

First Amended Complaint on or before **July 15, 2015**.  In his First Amended Complaint,

plaintiff shall list in separate counts the claims which he is asserting.  Plaintiff shall also

indicate specifically which claims he is asserting against which defendants.


Date: <u>June 29, 2015</u>                               **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                    Fernando J. Gaitan, Jr.
                                                         United States District Judge